OPINION OF THE COURT
Sheldon S. Levy, J.
The defendant was indicted on two counts of bail jumping in the first degree. Upon the jury trial before me and after the People’s case, the defendant moves for a trial order of dismissal. His claim is that once a bail bond has been forfeited, it cannot be reinstated without the consent of the surety; that no such consent was here obtained; that the court, therefore, *94 was without valid authority to reinstate the bail bond; that no bail bond was then in effect; and that he cannot be convicted of bail jumping, since he was not then properly released on bail.
The assertion is one of first impression.
The statute covering bail jumping in the first degree is section 215.57 of the Penal Law. It reads as follows: "A person is guilty of bail jumping in the first degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon condition that he will subsequently appear personally in connection with a charge against him of committing a felony, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.”
The basic elements of the crime of bail jumping are that (1) the defendant was released from custody or was allowed to remain at liberty by court order (2) either upon bail or upon his own recognizance (3) upon condition that he would subsequently appear personally at a designated date, time and place in connection with a felony charge and (4) did not so appear personally or voluntarily within 30 days thereafter.
On November 9, 1976, the defendant was indicted, inter alia, for attempted grand larceny in the first degree, which is a felony. On Februry 7, 1977, he was indicted again — this time, inter alia, for criminal sale of a controlled substance in the second degree — also a felony. Substantial bail was fixed in each case, and defendant’s release from custody was secured on February 10, 1977, by the posting of two bail bonds. It is these felony charges which constitute the underlying crimes in the two counts of bail jumping set forth in the subject indictment.
After an initial series of adjournments, a former Justice of the Supreme Court, on November 16, 1977, consolidated the two cases for trial, granted a further adjournment and directed defendant to appear at Part 106 of that court, in New York County, on November 28, 1977. When the defendant failed to appear on that date, his bail on each case was ordered to be forfeited and a bench warrant was issued for his arrest on both indictments.
The next evening, however, the defendant was apprehended and shortly thereafter was scheduled for a return in court on the warrant when he became ill. This resulted in a three-day stay at St. Vincent’s Hospital. From the hospital, on the *95 afternoon of Friday, December 2, the defendant, at his own request, was first brought for an interview to the District Attorney’s office. A few hours later, at approximately 4:45 p.m., the defendant was escorted to Part 104 of the Supreme Court for the delayed return on the bench warrant. Part 104 was selected because it was the only part still working at that late hour on a Friday afternoon, and because the Justice in Part 106 was not available. If the defendant could not secure a release from the Justice presiding in Part 104, he would have to be held over for the weekend for an appearance before the Part 106 Justice on Monday morning.
After briefly questioning the defendant pro se, the Justice in Part 104 reinstated the bail, had the warrant withdrawn and vacated the forfeiture. Immediately thereafter, the defendant was released upon condition that he would present himself at Part 106 on Monday morning, December 5, 1977, at 9:30 a.m. The Justice specifically cautioned the defendant to be there on time. The defendant thanked the court as he left, but allegedly failed to appear on December 5 or at any time thereafter until he was again arrested on another bench warrant on January 29, 1978.
The crux of defendant’s instant motion is that at the proceeding on December 2, 1977, at Part 104, when the defendant’s bail was reinstated, the Justice concededly did not either inform the surety on the bail bond of defendant’s application or secure the consent of the surety to the reinstatement. Relying upon the case of People v Maldonado (49 Misc 2d 641, affd 31 AD2d 717), the defendant asserts that without the surety’s appearance and written consent, the bail bond could not properly be reinstated after forfeiture; that there was, accordingly, no valid bail in force; that the defendant was not therefore released on bail; and that the People have failed to establish an essential element of the crime of bail jumping, namely, that the defendant was released from custody upon bail.
Initially, it may be argued that the Maldonado case is bad law. At least one court has more recently differentiated its result on facts approximating those of the case at bar (see People v Thomas, 75 Misc 2d 490). Moreover, continual strict adherence to its dictates would cause unnecessary hardship to untold numbers of defendants by way of occasioning additional court delay, added incarceration time and, perhaps, augmented bond fees in securing their ultimate re-release *96 from custody after bail has once been forfeited. In addition, the already overtaxed clerical facilities of the criminal parts of the courts would become even more overworked if there was an absolute requirement to give notice to a bail bondsman each and every time that a defendant was brought in on a bench warrant. Finally, and especially if defendant’s argument is accepted, any court that re-released a defendant for any reason without surety approval, mistakenly or otherwise, could expect the defendant to "skip” immediately and to attempt to evade apprehension forever since he could never thereafter be tried and convicted for bail jumping. Such a result appears ludicrous and, of course, was never intended by the judicially created law of the Maldonado case.
The simple answer, therefore, is that Maldonado and its few progeny relate only to the issue of whether the bail bond can be reinstated without surety consent and not to whether the defendant continues, in all events, his actual and practical release on bail. In other words, the Maldonado decision concerns only the forfeiture and possible future remission and does not affect the legal relationship between the court and the defendant in again releasing the defendant on bail. The concern of Maldonado is with the surety’s money, not with the defendant’s body.
In law and logic, the ministerial dereliction of the return court to notify the surety and to gain its consent before a reinstatement of bail (if that is, in fact, a legal and viable requirement) can only relate to the ultimate question of whether the bail itself has been forfeited by the surety because of the defendant principal’s final breach of the bail conditions. Any absence of judicial notification in this regard cannot and does not affect the reality that bail was originally fixed; that, although initially forfeited, the forfeiture was vacated and the bail reinstated; and that the defendant was ultimately conditionally released again upon the original bail arrangement.
The initial bond agreement was between the defendant principal and the surety. Upon breach of the agreement by the defendant, the bail may be ordered forfeited. This is an issue between the defendant and his surety. As a separate and distinct question, the defendant may also subject himself to a charge of bail jumping. This is an issue between the defendant and the People. If some action or inaction of the court occasioned an improper reinstatement of the bail bond, this issue *97 can be (and is being) litigated in a separate proceeding by the surety for a remission of the bail. Whether some action or inaction on the part of the Justice at Part 104 on December 2, 1977, occasioned or contributed to the charges of bail jumping against the defendant, is one of the factual issues for jury determination that is being litigated in the instant trial. That question should not be taken from the jury on the specious claim that the People have failed, prima facie, to establish an element of the crime.
Moreover, there was absolutely no mistake on the defendant’s part when he left the courtroom on December 2. As far as he was concerned, the Justice had heeded his pleas, had withdrawn the warrant, had reinstated his bail and had released him from custody. Nor was there any mistake on the part of the Justice in definitively setting forth the conditions of defendant’s release and the specifics of when he was to return to court.
If the defendant, in fact, did not return as directed, it was a clear violation of the bail conditions imposed. Even though "intent” is not an element of the crime of bail jumping (see People v Manitaras, 55 AD2d 629; People v Harris, 54 AD2d 739) and the People have no obligation to prove the defendant’s intent or lack of intent in failing to appear pursuant to court order, it was the defendant’s plain desire that he be re-released on his original bail. For all of his intents and purposes, he was.
Nor in equity and justice should the defendant be permitted to gain unanticipated advantage by virtue of his own asserted derelictions. When the defendant first failed to "show” at a scheduled court appearance on November 28, 1977, his apprehension the next day effectively insulated him from any bail jumping charges, since his production in court was accomplished before the expiration of 30 days from the date of the failure of his appearance (People v Bayless, 89 Misc 2d 206). However, if the defendant, in fact, neglected to appear on the required date of December 5, as alleged, and also did not appear voluntarily within 30 days thereafter (and since he is not raising any affirmative defense pursuant to section 215.59 of the Penal Law), he should not be automatically shielded from the present bail jumping counts by virtue of, at most, an obviously irrelevant judicial error.
Finally, even assuming the validity of defendant’s contentions by a stretch of judicial imagination, the counter-argu *98 ment can forcefully be made that if the defendant, on December 2, was not released "upon bail”, then he, most assuredly, was released on that occasion by court order "upon his own recognizanceIn either case, his lack of appearance on the required date — succinctly specified by the Presiding Justice as a condition of his release from custody — is clearly cognizable by the same section of the Penal Law which prescribes the elements and proscribes the conduct of the crime of bail jumping in the first degree. Nor can defendant claim prejudice or surprise in this regard since there is no change in the theory of the prosecution and since all of the other elements of the crime — whether the release is upon bail or upon a defendant’s own recognizance — are precisely the same.
For all of the reasons stated, defendant’s motion for a trial order of dismissal is, in all respects, denied.